**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| **McDONALD OIL COMPANY** | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMAND** |

---

**COMPLAINT**

---

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Melissa Owens and Crystal Ard (collectively referred to as "Charging Parties") and a class of female employees (collectively referred to as "the Class") who were adversely affected by such practices. As alleged with greater particularity in paragraphs eleven (11) through sixteen (16) below, Defendant McDonald Oil Company ("Defendant") subjected Charging Parties and the Class to harassment because of sex at Defendant's Orange Beach, Fairhope, and Spanish Fort, Alabama locations.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Southern Division of the United States District Court for the Southern District of Alabama.

**PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a Georgia corporation doing business in Alabama and other states and has continuously had over 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**ADMINISTRATIVE PROCEDURES**

6. More than thirty days prior to the institution of this lawsuit, Charging Parties each filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On June 10, 2021, the Commission issued to Defendant Letters of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join the

Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letters of Determination. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. On July 23, 2021, the Commission issued to Defendant a Notice of Failure of Conciliation regarding each charge advising Defendant that the Commission was unable to secure from Defendant conciliation agreements acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. From at least as early as June 2020, and continuing until late August 2020, Defendant has engaged in unlawful employment practices at its Orange Beach, Fairhope, and Spanish Fort gas station and convenience store locations in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

12. Specifically, Defendant subjected Charging Parties and the Class to severe, pervasive, unwanted, humiliating, degrading and offensive sexual conduct, based on their sex (female).

13. The unlawful sexual harassment, which was perpetrated by Defendant's employee, Billy McKinney, included, but was not limited to, the following sexually charged conduct that created a hostile work environment based on sex:

a. From his first encounters with the Charging Parties and on each occasion he worked with them, McKinney made inappropriate comments of a sexual nature to Charging Parties, or

about other female employees, or female customers, in the presence of Charging Parties. Many of these incidents were also witnessed by members of the Class.

b. On their first day working together, McKinney approached Ard when she arrived in the parking lot to start her shift and said, "I don't see how one female can be with just one man and have the same d**k." He told her that he could not be with just one woman or the same woman. He said this without introducing himself and without any invitation or provocation from Ard to engage in a discussion of a sexual nature.

c. Later that same day, McKinney followed Ard out of the store on her smoke break and told her that he was married but had been separated for five years. McKinney went on to say that his wife would not divorce him because she "wants more of this 9-inch d**k." Ard immediately complained to Store Manager Tonia Hartman and offered to write a statement which Hartman told her was unnecessary because she would handle it. Instead, Hartman took no action.

d. Over approximately the next two weeks, McKinney constantly made unwelcomed, lewd comments to Ard about her or to her regarding female employees or customers such as "shake that ass" or "hm, like them titties bounce" or "umm humm" in a sexual tone when she walked by him.

e. On one occasion, McKinney threw a sausage onto the counter in front of Ard and one Class member and then remarked that the Class member needed "some weenie" in her life.

f. Starting from his first day working with Owens, McKinney made ongoing unwelcomed sexual comments to her. For example, McKinney told Owens in a sexual tone that he wanted to "give her a workin' out" as her personal trainer and made a sexual gesture with his tongue. He also frequently remarked about her "rack" and made comments to her such as "look at that ass" and "you're shaped like a brick s**t house."

g. Store Manager Hartman witnessed several of these comments and heard complaints from Charging Parties, female customers, and the Class about McKinney's sexual comments but took no action to discipline McKinney or remedy the harassment. Instead, Hartman made light of McKinney's conduct calling him "different" and explaining that he was "from California."

h. McKinney obtained Owens phone number from a work-related group text. He then sent Owens sexually provocative text messages including asking her to be "friends with benefits" with him.

i. Starting the first day McKinney worked with Owens and on multiple subsequent shifts, he touched her in a physically threatening and sexual manner. He deliberately came into her work area for no reason except to pass by her and touch her in a sexually inappropriate manner three to four times a shift whenever they worked together. He brushed by her chest, grabbed her hips and rubbed his genitals against her buttocks while smirking and saying, "excuse me." Owens immediately complained to management, including District Manager Mike McDonald, but McDonald took no action to stop McKinney's harassment.

j. Worried for her personal safety and the safety of other female employees and customers, Owens obtained a full criminal background check on McKinney. After discovering that he had served time in prison in California for assaulting his wife, she showed the report to Hartman and McDonald on or around July 4, 2020. Even with this knowledge, Defendant took no measures to protect female employees from further unwanted sexual conduct by McKinney.

k. McKinney also touched Ard in a physically threatening and sexual manner. On or around July 6, 2020, McKinney entered the kitchen for no reason other than to walk behind Ard and forcibly touch her against her will. McKinney grabbed her hips and pushed his genitals into her buttocks. He did this multiple times that day despite Ard telling him to stop and immediately

reporting it to her supervisors Hartman and McDonald. He continued groping Ard even after another female employee who witnessed Ard become upset by this conduct also reported it that same day to Hartman and McDonald. Management did not discipline McKinney or otherwise act to prevent further harassment.

l. McKinney touched the Class and female customers in a sexually inappropriate manner against their will by pressing his genitals against their buttocks, putting his hands around their waist, or grabbing their buttocks which was unwelcomed, physically threatening and humiliating to them. McKinney got in the personal space of one female employee and made lewd comments such as how he liked her "titties" and wanted to put his face on the breasts of female customers.

m. McKinney constantly talked about his sexual activities. For example, he told one Class member that he took this job to have money to pay prostitutes, that he wore a "G" string, had an "enlarged clitoris" and worked a side job as a stripper. He also told one Class member he could "work off" her baby weight after she gave birth, implying by having sex with him.

n. McKinney followed Charging Parties and Class members into the parking lot or around the store in a stalking manner with no legitimate purpose to be near them.

o. McKinney also solicited Class members to have sex with him. He asked one to "go up on the roof and mess around" and asked her what she would do if he touched her. She told him not to touch her and complained to Store Manager Rhonda Rose who took no action to prevent further harassment.

p. McKinney asked Class members about their sex lives, whether they had a boyfriend, and asked if they would have sex with him.

q. McKinney told Class members that Defendant hired him knowing that he had

"mental health issues."

r. McKinney sent a member of the Class a photograph of his genitals with only a small cloth covering his penis.

s. McKinney frequently removed his shirt on the premises and walked around the parking lot. He also disrobed and walked around the parking lot in a tight "speedo" style swimsuit or underwear in front of customers and employees.

t. When female employees and Class members were discussing how some customers were scantily dressed, McKinney interjected, "You should have told me. I would have f**ked them in the parking lot."

u. McKinney inappropriately touched a female customer around her waist which prompted her fiancé to complain to Ard. Ard reported this harassment and gave the fiancé's contact information to McDonald and Hartman who did not discipline McKinney or take any action to prevent further harassment.

v. In the presence or hearing of at least one Class member, on one occasion, McKinney made a comment to an elderly female employee who came daily to the store that he could massage her. This prompted her to rush out of the store while he yelled after her not to rush off because "this could have been a good time." She stopped coming to the store.

w. Charging Parties and Class members saw, heard, or became aware that McKinney flashed teenage customers and offered to have sex with them or offered to pay for their merchandise if they had sex with him, and asked them about their sex lives.

x. McKinney did not treat male employees in the same manner as Charging Parties, the Class, and other female employees and customers as described above.

y. On or around August 25, 2020, Owens called Defendant's CEO, Tim Huff, and

complained about McKinney's sexual harassment and how District Manager Mike McDonald was aware of the hostile work environment but had not handled the situation. She described details of McKinney's harassment including grabbing her by the hips, grabbing a customer inappropriately, and walking around in a speedo style swimsuit or underwear on the premises. She also told Huff that McKinney got her phone number from a work-related group text and sent her "dirty" text messages.

z. On or around August 26, 2020, McKinney sent a direct message to Store Manager Hartman on Facebook that included two nude photos of himself, including one of his penis and a statement, "Which one of you said I think I'm god[']s gift to women[?] It['s] because I have a big cock." Hartman showed this message to Ard and sent it to McDonald. Despite having direct knowledge of this egregious harassment, Defendant permitted McKinney to work two shifts around female employees and customers before terminating him.

aa. Store Manager Hartman filed a police report regarding this Facebook message McKinney sent her which resulted in McKinney being criminally charged, convicted, and sentenced to a fine and 30 days in jail.

14. The effect of the practices complained of in paragraphs eleven (11) through thirteen (13) above has been to subject Charging Parties and the Class to a hostile work environment based on their sex (female).

15. The harassment described in paragraph thirteen (13) was severe, ongoing, and pervasive at Defendant's locations where McKinney worked.

16. Defendant knew McKinney was creating a hostile work environment as described in paragraph thirteen (13) based on numerous complaints by the Charging Parties, members of the Class and several female customers to at least four members of management: Defendant's CEO

Tim Huff, District Manager Mike McDonald, and Store Managers Tonia Hartman and Rhonda Rose. In addition, Hartman and McDonald witnessed McKinney's harassment on several occasions, and Hartman was informed about McKinney's criminal background involving the criminal assault of a female that resulted in a prison sentence.

17. The unlawful employment practices complained of in paragraphs eleven (11) through sixteen (16) above were intentional.

18. The unlawful employment practices complained of in paragraphs eleven (11) through sixteen (16) above were done with malice or with reckless indifference to the federally protected rights of Charging Parties and the Class.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in sexual harassment.

B. Order Defendant to institute and carry out policies, practices, and programs which provide a workplace free from sexual harassment, require employees, managers, and officers to undergo training on preventing and recognizing sexual harassment, provide multiple avenues for employees and customers to report sexual harassment, and train managers and officers to promptly act to remedy sexual harassment.

C. Order Defendant to make whole Charging Parties and the Class, by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs eleven (11) through sixteen (16) above,

including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

D. Order Defendant to pay to Charging Parties and the Class punitive damages for its malicious and reckless conduct described in paragraphs eleven (11) through sixteen (16) above, in amounts to be determined at trial.

E. Grant such further relief as the Court deems necessary and proper in the public interest.

F. Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED,

Gwendolyn Young Reams
Acting General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney
marsha.rucker@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 651-7045